UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARBOR PLASTIC
TECHNOLOGIES, LLC,

             Plaintiff,

v.

SPARTECH, LLC and
J. STERLING INDUSTRIES,
LTD,

             Defendant.

_____/

Case No. 3:21-cv-11194
District Judge Robert H. Cleland
Magistrate Judge Anthony P. Patti

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR RELIEF FROM DEFAULT AND DEFAULT JUDGMENT UNDER FED. R. CIV. P. 55(c) AND 60(b), EXCEPT AS TO COSTS (ECF No. 47)

I. **RECOMMENDATION**:  The Court should **GRANT** Defendant's motion

for relief from default and default judgment (ECF No. 47).

II. **REPORT**

    A. **Background**

        1. **Factual Background**

Plaintiff Arbor Plastic Technologies, LLC ("Arbor") filed this lawsuit

against Defendants Spartech, LLC ("Spartech") and J. Sterling Industries LTD.

("Sterling"), on April 8, 2021, in the Circuit Court for the County of Macomb,

Michigan, alleging breach of contract.  (ECF No. 1-2, PageID.16-17.)  The case was removed to this Court on May 21, 2021 by Defendant Spartech. (ECF No. 1.)

Based on the pleadings and the motion record, Sterling contracted with Arbor for supply of "Face-Shield Films," which Sterling required to produce PPE face shields for the Canadian government. (ECF No. 1-2, PageID.14.)  The course of performance of this contract is vehemently disputed by the parties.  Sterling alleges that "all of Plaintiff's product was rejected… for failure to meet specifications." (ECF No. 47, PageID.300.)  Sterling further claims that the films delivered to it by Arbor were "scratched, dirty, sticky, and contained various other non-conforming defects."  According to Sterling, the last official contact between the businesses was in November 2020, at which point Arbor was aware of the critical defects in its product and that the contract had been cancelled. (*Id.*)

By contrast, Arbor alleges that "Sterling approved and paid for approximately 500,000 face-shield films." (ECF No.64, PageID.369.)  Although Arbor concedes that some quality issues did exist, it maintains that these issues were remedied, and that Sterling continued to accept its product after the problems were resolved.  Arbor claims that Sterling abruptly ceased communication with it and did not convey any notice that the contract was terminated.  Thereafter, Arbor filed this suit. (*Id.*)

## 2.    Service of Process and Entry of Default Judgment

Arbor hired Canadian process serving company York Regional Document Services Inc. ("YRDSI") in May 2021 to serve Sterling. (ECF No. 64, PageID.371.)  On May 11, 2021, YRDSI employee John Desimone arrived at 295 Connie Crescent, Concord, Ontario to serve Sterling with a copy of the summons and complaint. (*Id.*)  At oral argument, Defendant admitted that this location is one of Sterling's principal places of business.  In his affidavit, Desimone stated that the documents were left with Sterling employee John Gutierrez. (ECF No. 64-5, PageID.449.)  Gutierrez is a "production scheduler" at Sterling. (ECF No. 64-3, PageID.401.)  While serving process, it is Desimone's habit to state that he is delivering a legal document, and that "it needs to be accepted by the most senior person authorized to accept service." (ECF No. 64-5, PageID.450.)  The record itself does not make clear the exact sequence of events leading to Gutierrez's appearance.  Desimone states in his affidavit that he is confident that he followed his habit, and that Gutierrez received the documents as a result. (*Id.*)  Counsel for Arbor represented that Gutierrez was presented to Desimone by a secretary.

Additionally, Arbor attempted to serve Sterling by mailing via certified mail a copy of the complaint and summons to Sterling's Connie Crescent facility on May 25, 2021. (ECF No. 64, PageID.373.)  Arbor also sent a copy to LARA Corporations Division in Lansing, in an attempt to satisfy Michigan Court Rule

3

2.105(D)(4), which permits this method for service of process on corporations which do not have a registered agent, but only in conjunction with the summons and complaint being sent to the target corporation via certified mail. (ECF No. 8, PageID.96 ¶¶3-5.)  Sterling failed to respond, and on June 28, 2021, default was entered against Sterling. (ECF No. 8.)  Arbor then sent a copy of the entry of default to the Connie Crescent location on July 1. (ECF No. 64, Page ID.373.) Neither the May 25 package nor the July 1 package were ever acknowledged as received by Sterling. (ECF No. 47, PageID.302.)  On November 12, 2021, Arbor moved for entry of default judgment against Sterling. (ECF No. 13.)  Service of that motion upon Sterling by any method is not readily apparent in the record. The motion was granted by this Court on December 13, 2021, and a judgment was entered against Sterling in the amount of $1,318,012.49, plus post-judgment interest. (ECF No. 15.)  Subsequently, Arbor acquired seven writs of garnishment against Sterling, including one targeting Sterling's Michigan subsidiary. (ECF No. 30–37.)  Sterling claims that on February 8, 2022, it learned of this lawsuit for the first time, due to the garnishments. (ECF No. 47, PageID.302.)

### 3.    Instant Motion

On February 15, 2022, Sterling moved for relief from default judgment pursuant Federal Rules of Civil Procedure 55(c) and 60(b). (ECF No. 47.)  The introduction to Defendant's brief summarizes its arguments as follows:

4

> Both the default and default judgment are void for Plaintiff's failure to effectuate proper service upon J. Sterling. Further, J. Sterling exhibited no culpable conduct which led to entry of the default and default judgment, there is no prejudice to the plaintiff not caused by itself, and J. Sterling ultimately has a meritorious defense, that being that J. Sterling appropriately rejected non-conforming goods for which Plaintiff is not entitled to compensation.

(ECF No. 47, PageID.299.)  Plaintiff filed a response brief in opposition to the motion on March 1, 2022. (ECF No. 64.)  There are four central arguments in Plaintiff's brief: (1) Service was proper under the Hague Convention and Canadian law; (2) Defendant engaged in culpable conduct by willfully ignoring this lawsuit; (3) Plaintiff will be prejudiced if the default judgment were to be set aside due to "substantial concerns" about Defendant's ability to retain and produce documents; and, (4) Defendant lacks a meritorious defense, as it provided no notice to Plaintiff that the contract between the two parties had been breached. (ECF No. 64, PageID.381-90.)  Defendant addressed these arguments in its March 8, 2022 reply. (ECF No. 65.)

### B.    Standard

Under Federal Rule of Civil Procedure 55(c), "the court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c).  In considering motions under Rule 55(c) and Rule 60(b) to set aside a default judgment, the Sixth Circuit applies a standard

extremely deferential to the defendant. *See United Coin Meter Co. v. Seaboard Coastline R.R.*, 705 F.2d 839, 845 (6th Cir. 1983).  In *United Coin,* the Court of Appeals held that "[j]judgment by default is a drastic step which may be resorted to only in the most extreme cases." *Id.*  Similarly *in Rooks v. American Brass Co.*, the Sixth Circuit held that "any doubts should be resolved in favor of the petition to set aside the judgment *so that cases may be decided on their merits*," and that "matters involving large sums of money should not be determined by default judgments if it can be reasonably avoided." 263 F.2d 166, 169 (6th Cir. 1959) (*Quoting Tozer v. Charles A. Krause Mill. Co.,* 189 F.2d 242, 245 (3d. Cir. 1951) (emphasis added)).  Further, this standard dictates that the court "'should ... construe[ ] all *ambiguous* or *disputed* facts in the light most favorable to the defendant[ ].'" *Burrell v. Henderson*, 434 F.3d 826, 832 (6th Cir. 2006) (quoting *INVST Financial Group, Inc. v. Chem-Nuclear Systems, Inc.,* 815 F.2d 391, 398 (6th Cir. 1987)) (emphases added, further internal citation omitted).  Although there is "public policy favoring the finality of judgments," the standard is decidedly in favor of the moving party due to the "competing policy consideration that values the disposition of cases on their merits." *Burrell,* 434 F.3d at 832.

## C.     Discussion

### 1. Factors for analysis

Federal Rule of Civil Procedure 60(b) sets out six requirements for which relief from final judgment may be granted.  Of particular interest in this case are sub-Rules 60(b)(4) ("the judgment is void") and 60(b)(6) ("any other reason that justifies relief.").  Generally, where the defendant seeks to set aside a default judgment, the defendant must satisfy one of the requirements of Rule 60(b) as well as the three "*United Coin* factors." *See United Coin,* 705 F.2d at 845.  As the Court of Appeals explained in *Waifersong, Ltd. Inc. v. Classic Music Vending,* 976 F.2d 290, 292 (6th Cir. 1992):

> Under the rule, a stricter standard applies for setting aside a default once it has ripened into a judgment. When a defendant seeks relief from a default that has been entered by the clerk upon a plaintiff's request, the district court enjoys considerable latitude under the "good cause shown" standard. But once the court has determined damages and a judgment has been entered, the district court's discretion to vacate the judgment is circumscribed by public policy favoring finality of judgments and termination of litigation. Rule 60(b) reflects this public policy by requiring greater specificity from a moving party before a court will set aside a default judgment. While the standards for granting relief differ, the factors to be considered by the court are said to be similar and to include:
>
> (1) Whether culpable conduct of the defendant led to the default,
>
> (2) Whether the defendant has a meritorious defense, and
>
> (3) Whether the plaintiff will be prejudiced.

(citing *United Coin Meter. See,* 705 F.2d at 845.)

In considering a motion under Rule 55(c) to set aside entry of default, applying the culpability *United Coin* factor entails "determining whether a petitioner is deserving of equitable relief." *Waifersong,* 976 F.2d at 292.   Where the Defendant moves under Rule 60(b) to set aside a default judgment, the Sixth Circuit combines the culpability *United Coin* factor with the specific requirement of the Rule 60(b) section under which the Defendant is moving.  Thus, where the defendant moves under Rule 60(b), "the specific requirements of Rule 60(b) narrow the scope of the court's equitable inquiry." *Id.*  For example, where the defendant moves under Rule 60(b)(1), the culpability factor is framed in terms of "mistake, inadvertence surprise, or excusable neglect." *Id.*  In order for the Court to consider the other *United Coin* factors, the Court must first determine whether, considering the requirements of Rule 60(b), the defendant is deserving of equitable relief. *Id.* ("It is only when the defendant can carry [the Rule 60(b)] burden that he will be permitted to demonstrate that he also can satisfy the other two factors[.]").

If the defendant seeks to set aside the default judgment under Rule 60(b)(4), this rule will replace the culpability *United Coin* factor.  However, if a judgment is found to be void, as where there is improper service, the other *United Coin* factors need not be considered. *See LSJ Inv. Co. v. O.L.D., Inc.*, 167 F.3d 320, 324 (6th Cir. 1999); *see also* 12 Moore's Federal Practice – Civil § 60.44[5][a].  Regardless of whether the plaintiff will be prejudiced, or whether the defendant can present a

meritorious defense, a void default judgment must be set aside. *Id.*   Further, even if a defendant was properly served, the Sixth Circuit has held that relief from default judgment is still appropriate under Rules 60(b)(1) and (6) if the defendant did not receive notice of the lawsuit despite service of process which was technically valid. *Thompson v. American Home Assur. Co.,* 95 F.3d 429, 433 (6th Cir. 1996) ("American Home clearly established surprise, as its agent attested that American Home was unaware that a lawsuit had been filed until after the default judgment had been entered.  Assuming *arguendo* that service of process on the Secretary of Labor was acceptable in these circumstances, the lack of actual notice of a lawsuit is a sufficient reason for the district court to set aside a judgment under Rule 60.") (citing *Rooks v. American Brass Co.,* 263 F.2d 166, 168 (6th Cir.1959) (*per curiam*) (where process was properly served at defendant's residence but was never received by the named defendant but rather was passed by his wife to his business manager, who mistook it for a suit involving defendant's corporation, default judgment was properly set aside)).

Here, Defendant moves for relief under Rule 55(c), Rule 60(b)(4), and Rule 60(b)(6). (ECF No.47, PageID.303.)  Therefore, the *United Coin* factors must be applied.  Further, the culpability factor of the *United Coin* must be narrowed by application of the of 60(b)(4) and (6) requirements, beginning with the question of whether judgment is void for lack of service or should be set aside for lack of

actual notice.  Subsequently, the prejudice and meritorious defense factors may be considered, if necessary.

### 2. Defendant's Culpability/Service of Process.

The culpability factor of the *United Coin* analysis suggests Defendant's motion should be granted, because the evidence is insufficient to establish whether proper service of process occurred, and whether Defendant was given proper and actual notice of the lawsuit.  Federal Rule of Civil Procedure Rule 4(h)(2) provides that service on a corporation in a foreign country may occur "in any manner prescribed by Rule 4(f)."  In turn, Federal Rule of Civil Procedure Rule 4(f) provides for service "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention . . . ."  Finally, the Supreme Court held in *Water Splash, Inc. v. Menon* that the Hague Convention "does not preempt any internal laws of its signatories that permit service from abroad via methods not otherwise allowed by the Convention."  137 S.Ct. 1504, 1508 (2017).  Therefore, the Court agrees with the parties that Canadian laws provides valid methods of service in this case, as Arbor attempted to serve Sterling in Canada and Canada is a Hague Convention signatory.

In its briefing Arbor has placed primary importance on the type of service allowed by Canadian national and provincial law in Ontario. (ECF No. 64,

PageID.377.)  Indeed, at the hearing, its counsel agreed that all the Court need

scrutinize as to proper service is whether it complied with the Canadian, and more

specifically the Ontario provincial rules of service.  One rule referenced in

Plaintiff's briefing is Rule 130 of the Canadian Rules Applicable to All

Proceedings.  Rule 130 allows personal service on a corporation by the following

procedure:

> (a)     by leaving the document…
>
>          (ii) with the person apparently in charge, at the time of the
> service, of the head office or of the branch or agency in Canada where
> the service is effected;
>           …or
> (c)  in the manner provided for service on a corporation in
> proceedings before a superior court in the province in which the
> service is being effected.

Similarly, Ontario Rule of Civil Procedure 16.02(1)(c) provides for service on a

corporation by leaving a copy of the documents to be served with "a person at any

place of business of the corporation who appears to be in control or management of

the place of business."

Critically, the Ontario and Canada Rules both similarly allow for service on

an individual who "appears" to be in control or is "apparently in charge" of the

place of business in question.  Although the Canadian rules of service are

undoubtedly more lenient than the Federal and Michigan rules, the Canadian rules

do not allow for service on any employee, in any scenario, simply because the process server subjectively believes that employee to be in control. *See Darling Construction Inc. v. Rooflifters LLC* (2009), 90 C.L.R. (3d) 194 (Ont. S.C.J.).  The Canadian court will not accept service "on just 'any old employee[,]'" and "the burden of persuasion that service is 'good' service rests with the party who advocates in favor of effective service." *Lapointe v. Gaz Speciaux M.E.G.S. Inc.* (2008), 2008 CarswellOnt 6959 (Ont. S.C.J.).  The Canadian Courts conduct an "objective determination," examining "the actions of the person being served not the judgment of the person presenting the material for service." *Darling,* 90 C.L.R. (3d) 194*.*  In *Darling*, the Ontario Superior Court of Justice held that to appear in charge the individual must "present oneself formally or publicly" as such. *Id.*

Here, by serving Defendant at its Concord, Ontario facility, a location which Defendant admitted at oral argument was one of three primary places of business, the location of the service was valid.  However, the question remains whether Gutierrez was a proper individual to accept the documents under Canadian law. Plaintiff contends that Gutierrez was a proper individual because, regardless of his position at Sterling, Gutierrez appeared to be in control of the Concord facility. (ECF No. 64, PageID.381.)  Defendant vehemently denies that Gutierrez has authority to accept process, stating repeatedly in its brief that he is "not an officer or resident agent or J. Sterling" and that he "has no authority to accept service on

behalf of J. Sterling." (ECF No. 47, PageID.306, 308.)  Therefore, in order for

service to be valid, Gutierrez must have "appeared" to be "in control or

management" or to have been "apparently in charge" of the Concord facility.

In establishing whether Gutierrez appeared in control of the Concord

facility, the Court must conduct an "objective determination" considering the

"actions of the person being served [,]" such as the way Gutierrez was presented

"formally or publicly." *Darlind*, 90 C.L.R. (3d) 194.  The only information on the

event comes from the process server's affidavit, his sparse, contemporaneous

notes, and from unsworn information offered by Plaintiff's counsel during oral

argument.  Plaintiff's process server was instructed to serve "anyone" in either

management or control of the Concord facility. (ECF No. 64-5, PageID.449.)  In

his affidavit, he reported he was "confident" he followed his usual "pattern or

practice" on that day:

> In my usual pattern and practice, and as is my habit, when I
> arrive at a location where I am serving process, I will say to the first
> person I encounter, in words *or in substance*, the following: "I am
> delivering a legal document. It needs to be accepted by *the most
> senior person authorized to accept service."* I am confident that, in
> this instance, I followed this usual habit and usual pattern and practice
> and made the above-noted statement.

(ECF No. 64-5, PageID.449-450, ¶15) (emphases added).  Although he is

"confident that, in this instance [he] followed [his] usual pattern and practice" and

requested "the most senior person authorized to accept service on behalf of J.

Sterling[,]" oral argument established that Desimone does not specifically remember this particular instance of service, beyond what can be gathered from his notes and usual practice. (ECF No. 64-5, PageID.449-450,¶¶ 15-16.)  Plaintiff's counsel represented to the Court that Desimone made his habitual request to a secretary and was presented with Gutierrez.  Plaintiff argues that because the process server followed his habit of requesting the most senior person authorized to accept service, "J. Sterling itself represented Gutierrez as 'a person who appears to be in control[.]'" (ECF No. 64, PageID.381) (emphasis omitted).  However, Desimone only states in his affidavit that Gutierrez "was identified as a 'Production Planner.'" (ECF No. 64-5, Page ID.449 ¶ 14.)  Similarly, his notes simply identify Gutierrez as "Production Planner," and say nothing about whether he was identified as, or for any other reason *appeared to be,* "in charge" or "in control" or in "management" of the facility.  (ECF 64-5, PageID.453.)  Further, neither his notes nor his affidavit tell us *why* he would have appeared to be in charge or control or in management, or even state who identified Gutierrez as a Production Planner.  Arbor attaches Gutierrez's LinkedIn page, but this simply identifies him as "Production Planner and Scheduler" since March 2020, immediately after being a "General Laborer" for a shoe company (his first job outside of Ecuador), giving no hint of management level status or control of a Sterling facility. (ECF No. 64-3.)  Additionally, Arbor notes that the server did not

14

make any record suggesting that Gutierrez "did not appear to understand English" (ECF No. 64, PageID.382), notwithstanding Sterling's claim that Gutierrez was a recent immigrant (ECF No. 47, PageID.308; ECF No. 47-1, PageID.315, ¶ 11).[1] For its part, Sterling points out that Gutierrez "is not an officer or resident agent of J. Sterling" and is not a "director, trustee, or person in charge of an office or business." (ECF No. 47, PageID.301; ECF No. 47-1, PageID.315, ¶ 11.)  In response to questioning from the Court, Sterling's counsel explained that while Gutierrez may have been a "production *planner*," the person who was in fact in charge at that location was the "production s*upervisor*."  Notably, the proof of service filed with the Court in this case does not even mention Gutierrez. (ECF No. 8-1.)

Plaintiff's arguments are ultimately unpersuasive, and the evidence leaves a number of factual doubts that must be resolved in favor of Defendant.  Desimone was "instructed" to serve "anyone" in management or control. (ECF NO. 64-5, PageID.449)  Such an instruction does not suggest that he was seeking the

---

[1] Although hinting in its supporting declaration that, "assuming he was served," Gutierrez "may" have suffered from a language barrier (ECF No. 47-1, PageID.316, ¶ 11), Sterling's counsel stated at oral argument that Defendant is not standing on the language issue.  Relatedly, Desimone's affidavit states that he did not record, "as a part of [his] usual habits", that Gutierrez was confused or uncertain, disputed accepting service, or was aggressive or hostile. (ECF No. 64-5, PageID.450, ¶ 17.)

individual who appeared to be in charge or control of the facility, in accordance

with the Canadian rules.  Rather, this instruction was, perhaps, aimed at

compliance with the rules governing service in Michigan.[2]  It is hard to overlook

that at no point in his affidavit does Desimone state anything to the effect that

Gutierrez appeared to be in charge or control of the place of business, let alone any

facts that would necessarily lead to that conclusion, even if, as is seemingly

undisputed from oral argument, he did manage *production of these particular face*

*shields*.  (ECF No. 64-2, PageID.398, ¶ 15.)  Alone, Desimone's statement of habit

and practice is insufficient evidence to conclude that Gutierrez was presented as

being in charge or control; a senior person authorized to accept service is not

necessarily in charge or control of the facility, and is not necessarily in

management either.[3]  Finally, Desimone's contemporaneous notes indicate that

---

[2] Michigan Court Rule 2.105(D) requires that service of process on a foreign corporation be made by serving the documents on "an officer or the resident agent" of the corporation.  In its initial motion for entry of default, Plaintiff relied exclusively on the Michigan rules and made no mention whatsoever of Canadian procedural rules. (ECF No. 8, PageID.94-96.)  This suggests that service was attempted, and instructions given, pursuant to the Michigan rule. Perhaps Plaintiff only later based its argument upon the Canadian rules after realizing that service would be improper under Michigan rules given Gutierrez's position.

[3] Analogously, a resident agent in Michigan is authorized to accept service, yet could be virtually anybody, even someone or some company totally unrelated to the business or management of the corporate defendant, *e.g.*, resident agent services offered by CSC Global.  *See* https://www.cscglobal.com/service/representation-services/registered-agent-

Gutierrez was presented as a "Production Planner," and not as a manager or supervisor. As evidenced by the affidavit of Sterling's president and sole shareholder, "Production Planner" is not a position considered an officer or manager in the Sterling corporation. (ECF No. 47-1, PageID.315, ¶ 11.) Therefore, it would be difficult to objectively say that Gutierrez was presented as being in charge or control when he was identified to the process server as holding a position which is not that of a manager or corporate officer. Further, it should not be inferred that Gutierrez appeared to be in charge or control, much less that he was in management, *from the mere absence* of any observation by Desimone that Gutierrez was confused, aggressive, or unsure of his ability to accept service. (ECF No. 64-5, PageID.450, ¶ 17.) Even the person holding the lowest position in a facility might take papers being handed to him and appear "unconfused," in an effort to be helpful or compliant, without appearing to be in charge, in control or in management. In light of the standard which requires that "all factual doubts [and ambiguities]… should be resolved in favor of [the defendant]," there is insufficient

---

services/ (last checked 7/18/22). *See also,* Mich. Comp. Laws 450.2241 ("Any of the following may serve as a resident agent: (i) An individual resident in this state whose business office or residence is identical with the registered office. (ii) A domestic corporation, a domestic business corporation, a foreign business corporation, a limited liability company, or another entity, if it is authorized to conduct affairs or transact business in this state and it has a business office identical with the registered office.").

evidence to conclude that service upon Sterling was proper and credible evidence that it was not. *See Burrell,* 434 F.3d at 832.  The record leaves substantial factual doubts and ambiguities[4] and, given the standards which the Court applies to default judgment motions, they must be resolved in favor of Defendant.  Service of process on Gutierrez should be deemed invalid, and as such, the default judgment voided and set aside.

Even if Gutierrez was someone apparently in charge or in management of the Concord facility at that time, relief should still be granted if Sterling did not have actual notice of this pending lawsuit. *See Thompson,* 95 F.3 at 434.  Sterling claims that it had no notice of the lawsuit until garnishments were imposed, despite multiple unopened packages found in Sterling's Concord manufacturing facility. (ECF No.47, PageID.296.)  Its president and sole shareholder testified that he "was not notified of the existence" of this lawsuit until he "heard about the garnishment on February 8, 2022" and that no one at Sterling notified him of a lawsuit until then. (ECF NO. 47-1, PageID.314-315, ¶¶ 1, 6-7.)  He further notes that Sterling

---

[4] Although factual doubts and ambiguities persist, there is a sufficient record before the Court to make a ruling on this matter. It may be that further discovery on this issue would reveal new information which, if known, might have led the Court to a different decision. Conversely, new information might have come to light which would only further bolster this decision. However, judicial economy suggests that all further action should be on the merits of the case. This Court and the parties need not spend additional time and resources litigating what is essentially a "sideshow" to the main issues of the case.

has no employees or assets in Michigan and conducts no business there (notwithstanding an apparently related company), while acknowledging that, "Upon discovery of the lawsuit…[s]everal UPS packages were located at [its] manufacturing facility [which] has no administrative staff nor any person authorized to accept service of process" on its behalf. (*Id.*, PageID.316, ¶¶ 13, 14.) Though each was allegedly addressed to the "Legal Department," Sterling says that no such department exists.  Ultimately, there are factual doubts as to who at Sterling in a management position or in apparent charge or control of the Connie Crescent facility, if anyone, was aware of the proceedings.  These doubts must be resolved in favor of the Defendant.  Moreover, the hearing established a clear record that Sterling never accepted any service by certified mail and that Arbor did not: attempt to serve Defendant's resident agent, move for alternate service, or utilize the Hague Convention process of service on the central authority.  One also wonders why service would be attempted and UPS packages later delivered to a manufacturing facility (where they were later found unopened), in lieu of corporate offices.  Taken together, the culpability factor of the *United Coin* analysis weighs in favor of granting the Defendant's motion for relief from default judgment.

### 3.    Prejudice to the Plaintiff if Default Judgment is Set Aside

Plaintiff will not be prejudiced if Defendant is granted relief from default judgment.  The Sixth Circuit has held that "[m]ere delay in satisfying a plaintiff's

claim, if it should succeed at trial, is not sufficient prejudice to require denial of a motion to set aside a default judgment." *United Coin,* 705 F.2d at 845. Rather, the plaintiff will only be prejudiced by delay where it is demonstrated that delay would result in "a loss of evidence, increased opportunities for fraud, or discovery difficulties." *Burrell v. Henderson,* 434 F.3d 826, 835 (6th Cir. 2006).

Here, Plaintiff argues that delay would hinder discovery. *Id;* (ECF No.64, PageID.387.) To support this argument Plaintiff points to the alleged facts and claims "substantial concerns about J. Sterling's ability to act responsibly, including retaining and producing documents requested in discovery." (ECF No. 64, PageID.387.) However, this vague concern, apparently related to difficulties in obtaining acknowledgment of service of process, does not equate to fraud, spoliation of evidence or discovery problems. The delay here will not cause and does not evidence problems in discovery regardless of the faults in any particular party. There is simply no track record to support such a conclusion, and the appearance of counsel is likely to obviate such concerns. The second *United Coin* factor points in favor of granting the Defendant's motion for relief from default judgment.

### 4.   Defendant's Claim of a Meritorious Defense

The third *United Coin* factor favors granting Defendant's motion for relief

from default judgment, as Defendant has a meritorious defense.  Importantly, "[i]n

determining whether a defaulted defendant has a meritorious defense 'likelihood of

success is not the measure.'" *United Coin*, 705 F.2d at 845 (quoting *Keegel v. Key*

*West & Caribbean Trading Co., Inc.,* 627 F.2d 372, 374 (D.C. Circ. 1980)).

Rather, "the key consideration is 'to determine whether there is some possibility

that the outcome of the suit after a full trial will be contrary to the result achieved

by the default.'" *INVST Financial Group, Inc. v. Chem-Nuclear Systems, Inc.* 815

F.2d 391, 399 (6th Cir. 1987) (quoting 10 C. Wright, A. Miller and M. Kane,

Federal Practice and Procedure, § 2697 at 531 (1983)).  Where such a possibility

exists, a meritorious defense has been established.

Here, Sterling plausibly argues that Arbor first substantially breached their

contract by failing to deliver conforming face shield films, and Arbor may not

maintain an action against Sterling for subsequent breach of the contract. (ECF No.

47, PageID.310.)  Sterling alleges that "all of Plaintiff's product was rejected …

for failure to meet specifications." (*Id.*)  Therefore, Sterling posits that this failure

constitutes a material breach. (*Id.*)  Under Michigan law, a party "'who commits

the first substantial breach of a contract cannot maintain an action against the other

contracting party for failure to perform.'" *Baith v. Knapp-Stiles, Inc.,* 156 N.W.2d

575, 578-579 (Mich. 1968) (quoting *Ehlinger v. Bodi Lake Lumber Co.,* 36

N.W.2d 311, 316 (Mich. 1949)).  Further, where a party's material breach impacts

a substantial or essential part of the contract, the non-breaching party is entitled to

rescind the contract. *Omnicom of Michigan v. Giannetti Inv. Co.,* 561 N.W.2d 138,

141 (Mich. Ct. App. 1997) (citing *Holtzlander v. Brownell,* 453 N.W.2d 295, 298

(Mich. Ct. App. 1990)).  In support of its position, Sterling attaches a declaration

which attests that the face shield films on Arbor's product "were scratched, dirty,

sticky, and contained various other non-conforming defects."  (ECF No. 47-1,

PageID.317, ¶ 16.)  It further avers that Sterling "did not timely cure the defect"

and that, therefore, Sterling "found an alternative supplier to satisfy its contract"

with the Canadian Government. (Id., ¶ 17.)   Emails attached to its reply brief

demonstrate that between July and November 2020 the parties were exchanging

communications about delays and production or quality issues relating to Arbor's

product, including the scratches. (ECF No. 65-1.)  On September 11th, Sterling

wrote: "Please keep in mind that this project [was] supposed to finish late August,

first week of September.  We have been using other suppliers' visors to fill our

orders to customer. ****  We may have to cancel balance of the order."  (*Id*.,

PageID.473.)  Arbor replied by apologizing "for the inconvenience we are causing

you." (*Id*.)  Nearly two months later, on November 5, 2020, Arbor represented that

it was "aggressively developing and investing *potential solutions* and

22

implementing them as we continue to address the problem," going on to describe a
"Potential Solution" for the scratches." (*Id*., PageID.475) (emphasis added).
Twenty days later, Arbor still appeared to be sending "new samples" related to
"corrective action" to Sterling. (*Id*., PageID.477.)

At oral argument, Sterling's counsel acknowledged that the face shield films
were indeed scratched, albeit for only a short period of time.  Arbor nonetheless
argues that Sterling's defense lacks merit because, although Arbor was aware of
some dissatisfaction, Sterling failed to give notice that it considered the contract
breached. (ECF No. 64, PageID.387.)  Further, Arbor argues that if some form of
notice was given, it was not in writing and came too late. (ECF No. 64,
PageID.388.)  Arbor argues that, under Michigan law and the contract between the
parties, Sterling would be required to give notice to Arbor if it intended to
terminate the contract due to breach. (ECF No. 64, PageID.387.)  Therefore,
Sterling would lack a meritorious defense if it had failed to notify Arbor.
However, Sterling contends that it did provide notice, and points to emails which
demonstrate that Arbor's employees were aware that Sterling had issued a "full
rejection" of a shipment and implored Sterling "please do not cancel the order."
(ECF No.65-1, PageId.473, 475.)  Further, Sterling alleges that its president and
owner informed the father of Arbor's owner that Sterling "did not owe any money
to Plaintiff and did not agree to pay any money." (ECF No. 47-1, PageID.315.)

It may be that discovery will reveal evidence which helps, or hurts, Sterling's position; however, the factual supportability and legal validity of Sterling's defenses or claims is an issue for a future summary judgment motion or for a trial on the merits, with a fully developed record. This heightened level of scrutiny, without further factual development, is not required for deciding the present motion. The Court need not now decide which party breached, whether a breach was properly declared or whether defects were timely cured. There does appear to be, at least at this preliminary juncture, a significant dispute as to which company was at fault, which breached and what information was conveyed between them. Suffice it to say that regardless of the eventual chance of success, Sterling has presented a defense which is "good at law" for present purposes. Therefore, the meritorious defense factor of the *United Coin* analysis weighs in favor of granting Defendant relief from default judgment.

**D.    Conclusion**

The Court should **GRANT** Defendant's motion for relief from default and default judgment (ECF No. 47) and allow the case to proceed on the merits, except as to its request for costs under E.D. Mich. LR 7.1(a)(3), as it was not unreasonable for Plaintiff to withhold consent under the circumstances detailed above. If the Court accepts this recommendation, the ruling would necessarily have the effect of **SUSTAINING** Defendant's objections to the pending garnishments, each of which

is based on improper service of process of the underlying pleadings and the

existence of a meritorious defense.  (ECF Nos. 49-55.)

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &*

*Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc*.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc*.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:   July 25, 2022

_____
Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE